UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARGARITO HERNANDEZ SANTOS, *on behalf of himself, FLSA Collective Plaintiffs, and the Class*,<br><br>Plaintiff,<br><br>-against-<br><br>NUVE MIGUEL CORP. d/b/a KEY FOODS, LUIS H. URGILES, KLEVER URGILES, and ANA URGILES,<br><br>Defendants | Case No.: 1:22-cv-00899 |

**DECLARATION OF C.K. LEE IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR CERTIFICATION OF THE SETTLEMENT CLASS, FINAL APPROVAL OF THE CLASS SETTLEMENT AND APPROVAL OF THE FLSA SETTLEMENT**

I, C.K. Lee, declare as follows:

1.   I am a partner in the firm of Lee Litigation Group, PLLC ("LLG") in New York, New York, Plaintiff's counsel herein. LLG is a firm based in New York City that focuses on representing plaintiffs in a wide variety of employment matters, including individual and class-wide violations of wage and hour laws, discrimination and harassment based on sex, race, disability, or age, among other areas.

2.   I make these statements based on personal knowledge and would so testify if called as a witness at trial.

**Background and Experience**

3.   I received a BS/BA from the University of Michigan/Ann Arbor, with concentrations in Biology and Chinese Language & Culture. I received a Juris Doctorate degree from The University of Pennsylvania Law School in 1997. I was admitted to the New York bar in 1998. I am also

1

admitted to the bars of the United States Supreme Court, the Second Circuit Court of Appeals and the United States District Courts for the Northern, Western, Eastern, and Southern Districts of New York. I am a member in good standing of each of these bars. Prior to establishing my own firm, I was associated with some of the top firms in New York City, including Clifford Chance, Morrison & Foerster and Schulte Roth & Zabel. Since April 2009, a substantial part of my practice has been in prosecuting wage and hour class and collective action cases.

4. I have served as lead counsel in <u>over</u> 100 court-approved wage and hour class and collective settlements. A list of these cases is attached hereto as **Exhibit A**.

**Thorough Investigation and Litigation of the Class Claims**

5. This proposed settlement would resolve claims brought by Plaintiff Margarito Hernandez Santos (hereinafter, "Plaintiff") and hourly non-supervisory and non-exempt employees employed by Defendants for the time period, between February 16, 2015 and May 16, 2022, and who do not opt-out of the Litigation. As part of the settlement, class members will release wage and hour claims under federal and New York State law, including all claims under 26 U.S.C. Section 7473, i.e., False Filing Claim, and the Federal Insurance Contribution Act, i.e., FICA, all wage and hour claims under the Fair Labor Standards Act, the New York Labor Law and/or any other applicable wage and hour law, rule, or regulation brought or which could have been brought in the Litigations filed in S.D.N.Y. under case no. "22-cv-899" and case no. "21-cv-1335" against Defendants NUVE MIGUEL CORP. d/b/a KEY FOODS, LUIS H. URGILES, KLEVER URGILES, and ANA URGILES (collectively, "Defendants") (together with Plaintiff, the "Parties").

6. Plaintiff, a former employee of Defendants, filed two separate actions against Defendants, alleging various violations of federal and state law in connection with his employment. Plaintiff has alleged that Defendants willfully filed fraudulent information returns with the IRS, in violation

of 26 U.S.C. § 7434, and that Defendants breached their contract with Plaintiff by failing to pay employer payroll taxes for Plaintiff and class members, as required by the Federal Insurance Contribution Act ("FICA").

7. Plaintiff also brought claims under the Fair Labor Standards Act as amended, 29 U.S.C. §§201 et. seq. ("FLSA") and the New York Labor Law ("NYLL") under case no. "21-cv-1335," alleging, inter alia, that Defendants failed to pay him and Class Members their proper wages, due to Defendants' improper policy of time-shaving and failed to pay the proper spread of hours premium. Plaintiff further alleged that Defendants failed to meet the NYLL's requirements on wage statements and notices. Defendants disclaim any wrongdoing or violation of any wage and hour laws.

8. On June 3, 2022, Plaintiff filed for preliminary approval of the settlement, which, for settlement purposes only, Defendants did not oppose. By Order dated August 25, 2022, the Court entered an Order preliminarily approving the settlement on behalf of the Rule 23 class and FLSA collective set forth therein (the "Class" or the "Class Members"). Prior to the mediation with Martin Scheinman of Scheinman Arbitration & Mediation Services, Esq. on May 2, 2022, at which the Parties reached a settlement in principle, Plaintiff's Counsel performed a damages calculation for the following claims: (i) unpaid wages, including overtime, due to time shaving, (ii) unpaid spread of hours premiums, and (iii) statutory damages. After investigating the claims of Plaintiff and the Class, in Plaintiff's and Class Counsel's view, it became apparent that certain claims carried significant risk, may be defeated, or at most, significantly weakened.

9. Before and during the formal litigation of the actions, a team of attorneys and paralegals at LLG conducted a thorough investigation into the claims and defenses. We focused our investigation and legal research on the underlying merits of class members' claims, the damages

to which they were entitled, and the propriety of class certification.

10. LLG conducted in-depth interviews with Plaintiff to determine the hours that he worked, the wages he was paid, the nature of his daily activities, the basis and substance of his allegations of time shaving, and other information relevant to his claims. LLG also obtained documents and data from the Plaintiff that helped evaluate the risks of the case. In preparation for the class mediation, Defendants produced 214 timecards for Plaintiff and Class Members, sample warning reports and employee introduction package. Based on the documents produced by Defendants for discovery and mediation, Defendant Klever Urgiles's deposition testimony, as well as the recollection and testimony of Plaintiff, Plaintiff's counsel was able to calculate the potential damages owed to Plaintiff and the Class Members prior to the Parties' private mediation on May 2, 2022.

11. Plaintiff provided information to Class Counsel regarding the wage and hour practices of Defendants. Plaintiff regularly communicated with us and assisted with the preparation of the complaints, the amended complaints, the second amended complaint, and the factual investigation of the claims. Plaintiff was deposed by Defendants on January 17, 2022. Plaintiff was responsive, responsible, and very helpful throughout the entirety of this case.

**Settlement Negotiations**

12. During the course of the litigation, the Parties have negotiated at length to reach a settlement figure for the class. Such negotiations were contentious where both Parties argued strenuously in favor of their positions.

13. The parameters of the settlement were also the result of contentious negotiations. The Parties were able to resolve this case through a full-day mediation overseen by Martin Scheinman of Scheinman Arbitration & Mediation Services on May 2, 2022. Prior to the mediation, Plaintiff

submitted a detailed mediation statement which explained to Mr. Scheinman the Plaintiff's and Class' claims, noted Defendants' vulnerabilities, acknowledged risks, and provided and explained Plaintiff's class-wide damage calculations. At the May 2, 2022, mediation, the Parties reached a settlement in principle. The terms of the settlement are set forth in the Class Settlement Agreement ("Settlement Agreement"), which was fully executed on May 12, 2022. If the parties had not been able to settle amicably, the parties would have engaged in further discovery, and retained and deposed experts. Plaintiff would have moved for summary judgment, and Defendants would have moved for decertification of the class and FLSA collective as well as summary judgment, each at a significant cost to the Parties.

14. On June 3, 2022, Class Counsel prepared and submitted a preliminary approval motion, which was approved by the Court on August 25, 2022.

15. At all times during the settlement negotiation process, negotiations were conducted on an arm's-length basis.

16. The Court-approved Notice of Proposed Settlement of Class and Collective Action Lawsuit and Fairness Hearing ("Notices") were mailed to Class Members by settlement administrator Arden Claims Service LLC on September 30, 2022.

17. Class Counsel believes the current settlement is fair, and the result of this settlement was not the product of any collusion among the parties. Plaintiff's Counsel believes that the settlement represents a significant percentage of the recovery that Plaintiff and the Class could have achieved had he and the Class prevailed on all their claims and survived an appeal.

18. Plaintiff's counsel believes that the gross settlement fund represents a fair recovery to Plaintiff and Class Members. While it is possible to argue that if Plaintiff were to prevail on all his claims, there would be substantial damages in excess of the gross settlement fund, such analysis

does not properly reflect the risk associated with this litigation. As such, the settlement negotiated represents an award that is attractive and fair.

**Results from Mailing of Class Notice**

19. The Settlement Agreement creates a fund of $450,000 representing the class settlement (the "Gross Settlement Fund"). The Fund covers attorneys' fees and costs, class members' awards, administration fees, and service award to the Class Representative.

20. Arden Claims Service ("Arden"), a third-party administration company administered the Notices. As detailed in the Declaration of C. K. Lee, on or about September 29, 2022, Defendants provided a class list of 114 Class Members to Arden. Arden mailed the Court-approved Notices on September 30, 2022 to 114 Class Members for which addresses had been provided by Defendants. 15 mailed notices were returned as undeliverable without forwarding addresses and 12 were re-mailed after a skip trace once alternate addresses had been found by the Claims Administrator. After the second mailing, all 12 re-mailed notices were successfully delivered, for a total of 111 delivered notices, for a total deliverable rate of approximately 97%. 3 Class Member was not ultimately located, for a total undeliverable rate of approximately 3%.

21. Three Class Members, after receipt of the Class Settlement Notice, have opted out of the settlement, and no Class Members have objected.

22. Class Counsel believes that the proposed settlement is fair because no individual has made any objections after the notices of settlement were mailed and only three individuals have chosen to exclude themselves from the settlement. *See Diaz v. E. Locating Serv. Inc.*, 2010 WL 550912 at *4 (S.D.N.Y.) (finding the fact that no class member objected to settlement demonstrated that the class approved of the settlement); *deMunecas v. Bold Food, LLC*, 2010 WL 3322580 at *5 (S.D.N.Y.) (same); *Wright v. Stern*, 553 F. Supp. 2d 337, 345 (S.D.N.Y. 2008) ("The fact that the

vast majority of class members neither objected nor opted out is a strong indication that the proposed settlement is fair, reasonable, and adequate."); *see also Rutti v. Lojack Corp.*, 2012 WL 3151077, at *6 (C.D. Cal. 2012) (low participation rate is not a reflection on success of class action).

I declare under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
February 10, 2023

Respectfully submitted,
**LEE LITIGATION GROUP, PLLC**

 */s/ C.K. Lee, Esq.*
C.K. Lee, Esq. (CL 4086)
Anne Seelig, Esq. (AS 3976)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: 212-465-1188
*Attorney for Plaintiff, FLSA Collective Plaintiffs and the Class members*