**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MARGARITO HERNANDEZ SANTOS, *on behalf of himself and all others similarly situated,* <br><br> Plaintiff, <br><br> -against- <br><br> NUVE MIGUEL CORP. <br> d/b/a KEY FOODS, <br> LUIS H. URGILES, KLEVER URGILES, and <br> ANA URGILES, <br><br> Defendants. | **Case No. 1:22-cv-00899** |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED
MOTION FOR CERTIFICATION OF THE SETTLEMENT CLASS,
FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT
AND APPROVAL OF THE FLSA SETTLEMENT**

**LEE LITIGATION GROUP, PLLC**
C.K. Lee, Esq. (CL 4086)
Anne Seelig, Esq. (AS 3976)
148 West 24th Street, Eighth Floor
New York, New York 10011
Telephone: (212) 465-1188
Fax: (212) 465-1181

*Attorneys for Plaintiff, FLSA Collective Plaintiffs and the Class*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................ ii

INTRODUCTION ................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND .................................................. 1

   I.   Procedural History ..................................................................................... 1

   II.   Overview of Investigation and Discovery ................................................. 2

   III.   Settlement Negotiations, Further Discovery & Preliminary Approval ................... 4

ARGUMENT ......................................................................................................... 5

   I.   The Settlement Class Meets the Legal Standard for Class Certification ................ 5

      A.   Numerosity ............................................................................................. 6

      B.   Commonality .......................................................................................... 6

      C.   Typicality ................................................................................................ 7

      D.   Adequacy of the Plaintiff ....................................................................... 8

      E.   Certification Is Proper Under Rule 23(b)(3) .......................................... 9

      F.   The Class Satisfies Section 16(b) of the FLSA .................................... 11

   II.   The Proposed Settlement Is Fair, Reasonable, and Adequate and Should Be  Approved in All Respects ................................................................. 12

      A.   The Proposed Settlement Is Substantively Fair .................................... 13

      B.   The Proposed Settlement Is Procedurally Fair ..................................... 21

   III.   Approval of the FLSA Settlement Is Appropriate Under Federal Law ................ 24

CONCLUSION ..................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ................................................ 9, 10, 11

*Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81 (S.D.N.Y. 2001) ............................ 24

*Asare v. Change Grp. of New York, Inc.*, No. 12 Civ. 3371 (CM), 2013 WL 6144764 (S.D.N.Y. Nov. 18, 2013) ................................................................................................... 10

*Beckman v. Greentree Sec., Inc.,* 87 N.Y.2d 566, 663 N.E.2d 886, 640 N.Y.S.2d 845 (1996) ... 23

*Beckman v. KeyBank, N.A.*, 293 F.R.D. 467 (S.D.N.Y. 2013) ............................................. 15, 18

*Beh v. Cmty. Care Companions Inc.,* No. 1:19-CV-01417-JLS-MJR, 2022 WL 5039391 (W.D.N.Y. Sept. 29, 2022) ................................................................................................ 19

*Berland v. Mack*, 48 F.R.D. 121 (S.D.N.Y. 1969) .............................................................. 23

*Cagan v. Anchor Sav. Bank FSB*, No. 88 Civ. 3024, 1990 WL 73423 (E.D.N.Y. May 22, 1990) ......................................................................................................................... 21

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) .................................. 12, 13, 14, 21

*Clark v. Ecolab, Inc.*, Nos. 07 Civ. 8623(PAC), 04 Civ. 4488(PAC), 06 Civ. 5672(PAC), Slip Copy, 2009 WL 6615729 (S.D.N.Y. November 27, 2009) ................................................ 7, 10

*Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473 (2d Cir. 1995) ...................................... 6

*Contrera v. Langer*, 278 F. Supp. 3d 702 (S.D.N.Y. 2017) ..................................................... 12

*D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) ................................................... 13, 21

*deMunecas v. Bold Food, LLC*, 2010 WL 3322580, at *5 (S.D.N.Y. Aug. 23, 2010) ..... 15, 21, 25

*Denney v. Deutsche Bank AG,* 443 F.3d 253 (2d Cir. 2006) .............................................. 5, 8

*Diaz v. Eastern Locating Serv.*, 2010 WL 5507912 (S.D.N.Y. Nov. 29, 2010) ............... 15, 21, 25

*Dorn v. Eddington Sec., Inc.*, No. 08 Civ. 10271 LTS, Slip Copy, 2011 WL 382200 (S.D.N.Y. January 21, 2011) ........................................................................................................... 7

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005) .................................... passim

*Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147 (1982) ............................................................. 6

*Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000) ......................................... 13

*Green v. Wolf Corp.*, 406 F.2d 291 (2d Cir. 1968) ............................................................. 10

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ..................................................... 11

*Henry v. Little Mint, Inc.*, No. 12 Civ. 3996 (CM), 2014 WL 2199427 (S.D.N.Y. May 23, 2014) ......................................................................................................................... 16

*Hoffmann-LaRoche Inc. v. Sperling*, 493 U.S. 165 (1989) ................................................. 25

*In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 145 (2d Cir. 1987) .................................... 23

*In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164 (S.D.N.Y. 2000) ........ 13, 16

*In re Colt Indus.,* 155 A.D.2d 157, 553 N.Y.S.2d 140(1st Dep't 1990) ................................... 23

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ................................................................................................ 22

*In re Ira Haupt & Co.*, 304 F. Supp. 917 (S.D.N.Y. 1969) .................................................... 16

*In re Merrill Lynch Tyco Research Securities Litigation*, 249 F.R.D. 124 (2008) ..................... 22

*In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104 (S.D.N.Y. 1997) .................................. 16

*In re Prudential Securities, Inc.,* 164 F.R.D. 362 (S.D.N.Y 1996) ........................................... 23

*In re Top Tankers, Inc. Sec. Litig.*, No. 06 Civ. 13761, 2008 WL 2944620 (S.D.N.Y. July 31, 2008) ......................................................................................................................... 22

*In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124 (2d Cir. 2001) ............................ 9

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004) ..................................... 15

*Kamean v. Local 363, Int'l Bhd. of Teamsters*, 109 F.R.D. 391 (S.D.N.Y. 1986) ......................... 6

*Leber v. Citigroup 401(k) Plan Inv. Comm.*, 323 F.R.D. 145 (S.D.N.Y. 2017) ............................ 8

*Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169 (S.D.N.Y. 2014).................................................... 9

*Lynch v. United Services Automobile Assoc.*, 491 F. Supp. 2d 357 (S.D.N.Y. 2007).................. 11

*Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982)................................ 25

*Maley v. Del Global Techs. Corp.,* 186 F. Supp. 2d 358 (S.D.N.Y. 2002) ................................. 14

*Marisol A. v. Giuliani*, 126 F.3d 372 (2d Cir. 1997) ........................................................ 6, 8, 16

*Martens v. Smith Barney, Inc.*, 181 F.R.D. 243 (S.D.N.Y. 1998) ................................................. 8

*McBean v. City of N.Y.*, 228 F.R.D. 487 (S.D.N.Y. 2005) ......................................................... 10

*McKenna v. Champion Int'l Corp.*, 747 F.2d 1211 (8th Cir. 1984) ............................................ 25

*Metcalf v. TransPerfect Translations Int'l, Inc.,* No. 19 CIV. 10104 (ER), 2022 WL 4661926
   (S.D.N.Y. Sept. 30, 2022)........................................................................................................ 19

*Miles v. Merrill Lynch & Co. (In re Initial Pub. Offering Sec. Litig.)*, 471 F.3d 24 (2d Cir. 2006)9

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) .................................. 21

*Peoples v. Annucci*, 180 F. Supp. 3d 294 (S.D.N.Y. 2016) ........................................................ 22

*Peters v. National R.R. Passenger Corp.,* 966 F.2d 1483 (D.C. Cir. 1992) ................................ 23

*Raniere v. Citigroup Inc,*, 310 F.R.D. 211 (S.D.N.Y. 2015) ...................................................... 18

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26 (E.D.N.Y. 2006) ................... 6

*RMED Int'l, Inc. v. Sloan's Supermkts., Inc.*, No. 94 Civ. 5587. 2003 WL 21136726 (S.D.N.Y.
   May 15, 2003)........................................................................................................................... 14

*Robidoux v. Celani*, 987 F.2d 931 (2d Cir. 1993) ....................................................................... 8

*Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590 (2d Cir. 1986) ................................................... 9

*Sanders v. CJS Sols. Grp., LLC*, No. 17 Civ. 3809 (ER), 2018 WL 620492 (S.D.N.Y. Jan. 30,
   2018) .......................................................................................................................................... 8

*Silber v. Mabon,* 18 F.3d 1449 (9th Cir. 1994).......................................................................... 23

*Sudilovskiy v. City WAV Corp.,* No. 22-CV-469 (DG), 2022 WL 4586307 (E.D.N.Y. Sept. 29,
   2022) ......................................................................................................................................... 19

*Surdu v. Madison Glob., LLC*, 2017 WL 3842859 (S.D.N.Y. Sept. 1, 2017) ............................. 13

*Torres v. Gristede's Corp.*, No. 04 Civ. 3316, 2006 WL 2819730 (S.D.N.Y. Sept. 29, 2006).... 10

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005) ..................... 12, 18, 21, 22

*Weigner v. City of New York,* 852 F.2d 646 (2d Cir.1988)................................................... 22, 23

*Weigner v. New York,* 488 U.S. 1005 (1989)............................................................................. 23

**Statutes**

26 U.S.C. § 6724........................................................................................................................ 17

26 U.S.C. § 7434 ................................................................................................................ passim

29 U.S.C. § 216................................................................................................................ 11, 12, 14

**Rules**

Fed. R. Civ. P. 23(a) .......................................................................................................... passim

Fed. R. Civ. P. 23(b) .......................................................................................................... passim

Fed. R. Civ. P. 23(c) .................................................................................................................. 23

Fed. R. Civ. P. 23(e) .................................................................................................................. 12

## INTRODUCTION

Plaintiff MARGARITO HERNANDEZ SANTOS ("Named Plaintiff") submits this Memorandum of Law in support of the Motion for Certification of the Settlement Class, Final Approval of the Class Action Settlement, and Approval of the FLSA Settlement ("Plaintiff's Motion for Final Approval").

## FACTUAL AND PROCEDURAL BACKGROUND

### I.   Procedural History

Plaintiff, a former employee of Defendants, filed two separate actions against Defendants, alleging various violations of federal and state law in connection with his employment. In this instant action, *Santos v. Nuve Miguel Corp. et al.*, 1:22-cv-00899, Plaintiff has alleged that Defendants willfully filed fraudulent information returns with the IRS, in violation of 26 U.S.C. § 7434, and that Defendants breached their contract with Plaintiff by failing to pay employer payroll taxes for Plaintiff and class members, as required by the Federal Insurance Contribution Act ("FICA"). Defendants maintain their position that the claims lack any merit.

In addition, pursuant to the terms of The settlement, Class Members will be releasing claims under the Fair Labor Standards Act as amended, 29 U.S.C. §§201 *et. seq.* ("FLSA") and the New York Labor Law ("NYLL"). Plaintiff has alleged that Defendants failed to pay him and Class Members their proper wages, due to Defendants' improper policy of time-shaving and failed to pay the proper spread of hours premium. Plaintiff further alleged that Defendants failed to meet the NYLL's requirements on wage statements and notices. Defendants disclaim any wrongdoing or violation of wage and hour laws.

## II.   <u>Overview of Investigation and Discovery</u>

Plaintiff's Counsel conducted a thorough investigation of the claims and defenses, focusing on the underlying merits of the claims of Class Members, the damages to which they were entitled, if any, and the propriety of class certification. In advance of the mediation, both parties submitted detailed mediation statements that explained the claims and defenses, noted their respective vulnerabilities, acknowledged risk, and explained the damage calculations each had performed based on the documents produced by the parties for such purposes. In preparation for the class mediation, Defendants produced timecards for Plaintiff and Class Members, sample warning reports and employee introduction package.   Plaintiff's Counsel also interviewed his client concerning the claims in the case. Based on the documents produced by Defendants for discovery and mediation, Defendant Klever Urgiles's deposition testimony and Plaintiff's testimony, Plaintiff's Counsel was able to assess the merits of Plaintiff's claims, the likelihood of class or collective action certification, and estimate the potential damages owed to Plaintiff and Class Members.

Plaintiff wishes to avoid the risk of further litigating his claims. There is an inherent risk in going to trial of being unable to establish any liability. A trial would involve significant risks to Plaintiff because of the fact-intensive nature of proving liability under the FLSA and the NYLL, especially in regard to the time-shaving claim, which is highly dependent on testimony, and in light of the defenses available to Defendants. Proving the time-shaving claim would rely heavily on witness testimony and Defendants would provide their own witnesses to counter such claims, which could impede Plaintiff's ability to defend his claim, or result in a lower recovery.

If Defendants were to succeed at trial in establishing that Plaintiff and the class were properly paid for all hours worked, Plaintiff and class members would run the risk of obtaining

less than the payment being received in the settlement, if anything at all. We believe that even if Plaintiff were to obtain a judgment greater than $450,000 in the future, any additional amounts would be significant risk to collection since Defendants maintain that they cannot withstand a greater judgment. Considering the risks of ongoing litigation, the defenses available to Defendants, and the inability of Defendants to withstand a greater judgment, the $450,000 settlement amount provides Plaintiff and the Class with a recovery that is both fair and reasonable. Particularly, given the economic complications resulting from the current COVID-19 Pandemic, obtaining any payment on a class settlement is a complete victory and puts money in the hands of workers who need it.

The various risks on the substance of the claims and the challenges with achieving commonality on the class claims make this a good recovery for the Class, where each person will obtain, on a gross, per capita basis, $4,054.00 per person before fees and expenses are deducted, without class members having to endure litigation. Based on the Claims Administrator's calculations of the actual settlement allocations to the Class Members who did not opt out, the highest settlement payment will be approximately $9,451.10, the average settlement payment will be approximately $2,242.57 and the per week award will be $25.90. While Plaintiff believes that they could ultimately establish Defendants' liability on some of his claims, to do so would require significant factual development. Plaintiff's counsel is experienced and realistic, and understands that the resolution of liability issues, the outcome of the trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration. The proposed settlement alleviates these uncertainties. Moreover, given the current economic conditions, obtaining any further, timely payment on this class settlement would be a complete victory and would put money in the hands of workers who need it. This factor therefore weighs heavily in favor of final approval.

### III.    Settlement Negotiations, Further Discovery & Preliminary Approval

The Parties engaged in extensive negotiations. The formal parameters of the settlement were the result of contentious negotiations. On May 2, 2022, after having engaged in numerous informal telephonic settlement discussions, the Parties engaged in a full-day in-person mediation with Martin F. Scheinman, a highly respected mediator experienced in resolving complex employment disputes. Prior to the mediation, Plaintiff submitted a detailed mediation statement which explained to Mr. Scheinman the Plaintiff's and Class' claims, noted Defendants' vulnerabilities, acknowledged risks, and provided and explained Plaintiff's damage calculations. During this mediation, the Parties reached a settlement in principle. After additional negotiations, the Parties reached an agreement on all terms, which they memorialized in the Settlement Agreement, which was fully executed on May 12, 2022.

Because of the uncertainty of Plaintiff's legal position and the uncertainty of obtaining class certification and maintaining class certification through trial, the Parties agreed to the settlement of $450,000.00. Class Counsel then prepared and submitted a preliminary approval motion, which was approved by the Court on August 25, 2022.

### SUMMARY OF THE SETTLEMENT TERMS AND ADMINISTRATION

| Category | Settlement Term | Remarks |
|---|---|---|
| Gross Settlement Fund | $450,000 | The Fund covers all of Defendants' obligations under the settlement (exclusive of payroll taxes) |
| Attorneys' Fees, Costs & Expenses | 1/3 of the Gross Settlement Fund ($150,000), plus costs and expenses ($9,346.88) | Class Counsel has filed a motion for approval of attorneys' fees, costs, and expenses with this motion. |
| Administration Fees | Arden Claims Service LLC $25,000 | Administration Fees are to be paid out of the Gross Settlement Fund. |
| Service Awards | $10,000 | Class Counsel has filed a motion for approval of the service award simultaneously with this motion. |
| Claims Made / Opt-out basis | Are class members required to file a claim form to receive a payment? | No. This is not a claims-made settlement, meaning that class members are not required to submit a claim form to receive a payment. |

| Allocation Formula | How will the individual settlement allocations be calculated? | After the deduction of the court-approved service award, attorneys' fees and costs, and administration fees from the Settlement Fund, individual settlement allocations will be computed based on the number of weeks worked by Class Members during the relevant period. |
|---|---|---|
| Release | What is the scope of the release? | Every class member who does not opt out will release Defendants from all false filing claims under 26 U.S.C. Section 7473, and FICA claims under the Federal Insurance Contribution Act, and wage and hour claims that have been brought, or could have been brought through May 16, 2022, under the New York Labor Law and/or any other applicable state, city, or local wage and hour law, rule or regulation governing the payment of wages. Only Class Members who endorse their settlement check(s) will release Defendants from Fair Labor Standards Act claims. |
| Funding | What is the status of Defendants' funding? | Defendants have funded $240,000 to date of the settlement amount to the Administrator. |
| Reversion | Is there any reversion? | Yes. Any unclaimed funds from the Class Settlement Amount not distributed within ninety (90) days of the mailing date shall revert to the Defendants. |

## ARGUMENT

### I.   The Settlement Class Meets the Legal Standard for Class Certification

When faced with a proposed class action settlement, courts first examine whether the settlement class can be certified. *Denney v. Deutsche Bank AG,* 443 F.3d 253, 270 (2d Cir. 2006). On August 25, 2022, the Court preliminarily certified the settlement class. The Court should now grant final certification because all of the requirements of Federal Rule of Civil Procedure 23 ("Rule 23") are met. Plaintiff respectfully requests that the Court certify the following class for purposes of effectuating the settlement: Named Plaintiff and all hourly non-supervisory and non-exempt employees employed by Defendants, between February 16, 2015 and May 16, 2022, who do not opt-out of the Litigation. Under Rule 23, a class action may be maintained if all of the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b). Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of

law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

Rule 23(b)(3) requires the Court to find that: "[Q]uestions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *Id.* at (b)(3). In the Second Circuit, "Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility" in evaluating class certification. *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 31 (E.D.N.Y. 2006) (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997)).

### A. Numerosity

Numerosity is satisfied when the class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[N]umerosity is presumed at a level of 40 members . . ." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). Plaintiff clearly satisfies the numerosity requirement as there are 114 class members.

### B. Commonality

The proposed class also satisfies the commonality requirement, the purpose of which is to test "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982). Although the claims need not be identical, they must share common questions of fact or law. *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 181 (W.D.N.Y. 2005). There must be a "unifying thread" among the claims to warrant class certification. *Kamean v. Local 363, Int'l Bhd. of Teamsters*, 109 F.R.D. 391, 394 (S.D.N.Y. 1986).

Courts construe the commonality requirement liberally. *Frank*, 228 F.R.D. at 181. In Plaintiff's view, the required relationship between the claims of Plaintiff and those of the class clearly exists here.

Plaintiff asserts that he and Class Members bring similar claims that involve numerous common issues. Specifically, Plaintiff asserts that Defendants violated 26 U.S.C. § 7434 and the Federal Insurance Contribution Act with respect to him and Class Members, and failed to pay him and Class Members the proper wages due to time-shaving, and also failed to provide him with wage statements and wage notices in conformity with the NYLL. Plaintiff contends that other common issues include, but are not limited to: (a) whether Defendants employed Plaintiff and members of the Class within the meaning of New York and federal law; (b) Defendants' practices regarding failure to pay proper wages; and (c) the nature of Defendants' policies, practices, payroll systems and tax reporting. *See Dorn v. Eddington Sec., Inc.*, No. 08 Civ. 10271 LTS, Slip Copy, 2011 WL 382200, at *2 (S.D.N.Y. January 21, 2011) (Rule 23(a)(2) satisfied where common issues included whether defendants violated wage and hour laws by failing to pay overtime and spread of hours pay, making deductions from plaintiff's and class members' pay, and failing to keep accurate records of time worked); *Clark v. Ecolab, Inc.*, Nos. 07 Civ. 8623(PAC), 04 Civ. 4488(PAC), 06 Civ. 5672(PAC), Slip Copy, 2009 WL 6615729, at *3 (S.D.N.Y. November 27, 2009) (commonality satisfied where common issues included "whether Defendant violated wage and hour laws by failing to pay overtime premium pay for hours [class members] worked over 40 in a workweek, and failing to keep accurate records of time worked").

### C.  Typicality

Typicality is also satisfied. Typicality is satisfied "when each class member's claim rises from the same course of events, and each class member makes similar legal arguments to prove

the defendant's liability." *Marisol A.*, 126 F.3d at 376 (internal quotation marks omitted). "Like

the commonality requirement, typicality does not require the representative party's claims to be

identical to those of all class members." *Frank*, 228 F.R.D. at 182. "[M]inor variations in the fact

patterns underlying individual claims" do not defeat typicality when the defendant directs "the

same unlawful conduct" at the named plaintiff and the class. *Robidoux v. Celani*, 987 F.2d 931,

936-37 (2d Cir. 1993). Here, Plaintiff contends that his claims arise from the same factual and

legal circumstances that form the bases of the Class Members' claims. Plaintiff contends that he

and Class Members were all hourly non-supervisory and non-exempt employees employed by

Defendants, and that they were subject to the same policies as identified above. Because Plaintiff's

wage and hour claims arise from the same factual and legal circumstances that form the basis of

Class Members' claims, Plaintiff satisfies the typicality requirement.

### D. Adequacy of the Plaintiff

Named Plaintiff is an adequate class representative. Rule 23(a)(4) requires that "the

representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ.

P.23(a)(4). "The adequacy requirement exists to ensure that the named representative will 'have

an interest in vigorously pursuing the claims of the class, and ... have no interests antagonistic to

the interests of other class members.'" *Leber v. Citigroup 401(k) Plan Inv. Comm.*, 323 F.R.D.

145, 164 (S.D.N.Y. 2017) (quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir.

2006)). "[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's

claim of representative status." *Sanders v. CJS Sols. Grp., LLC*, No. 17 Civ. 3809 (ER), 2018 WL

620492, at *5 (S.D.N.Y. Jan. 30, 2018) (quoting *Martens v. Smith Barney, Inc.*, 181 F.R.D. 243,

259 (S.D.N.Y. 1998)). Here, Plaintiff satisfies the adequacy requirement because there is no

evidence that Plaintiff and Class Members' interests are at odds – on the contrary, Plaintiff's interests are clearly aligned with the interests of the class.

### E.  Certification Is Proper Under Rule 23(b)(3)

Rule 23(b)(3) requires that the common questions of law or fact "predominate over any questions affecting only individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality." *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986).

### 1.  Common Questions Predominate

Predominance requires that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole…. predominate over those issues that are subject only to individualized proof." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001) (internal quotation marks omitted), *abrogated on other grounds by Miles v. Merrill Lynch & Co. (In re Initial Pub. Offering Sec. Litig.)*, 471 F.3d 24 (2d Cir. 2006). The predominance requirement, which is meant to test "whether proposed classes are sufficiently cohesive to warrant adjudication by representation," is "a more demanding criterion than the commonality inquiry under Rule 23(a)" and is designed to determine whether 'proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 176 (S.D.N.Y. 2014) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997)).

Where plaintiff is "unified by a common legal theory" and by common facts, the predominance requirement is satisfied. *McBean v. City of N.Y.*, 228 F.R.D. 487, 502 (S.D.N.Y.

2005). Here, Plaintiff asserts that Class Members' common factual allegations and common legal theory – that Defendants violated 26 U.S.C. § 7434 and the Federal Insurance Contribution Act, and failed to pay proper wages – predominates over any factual or legal variations among class members. Similarly, Plaintiff's claims that the other common questions and legal theories – including an alleged failure to provide proper wage statements and notices – predominate over any factual or legal variations among Class Members. *See Clark*, 2009 WL 6615729, at *5 (common factual allegations and common legal theory predominated over factual and legal variations among Class Members in wage and hour misclassification case); *Torres v. Gristede's Corp.*, No. 04 Civ. 3316, 2006 WL 2819730 (S.D.N.Y. Sept. 29, 2006), at *16 (plaintiffs "introduced sufficient proof that Defendants engaged in a common practice to deny employees overtime pay," and "this issue predominates over any individual calculations of overtime wages"). The only individualized issues pertain to the calculation of damages, and it is well-settled that individualized damages calculations do not defeat predominance. *See Frank*, 228 F.R.D. at 183 (collecting cases holding that calculation of damages in overtime litigation does not impact the predominance analysis). Plaintiff therefore satisfies Rule 23(b)(3).

### 2.  A Class Action Is a Superior Mechanism

Plaintiff also satisfies the superiority requirement. Superiority analyzes whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy." *Asare v. Change Grp. of New York, Inc.*, No. 12 Civ. 3371 (CM), 2013 WL 6144764, at *8 (S.D.N.Y. Nov. 18, 2013); (quoting *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968)); *Amchem*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.").

10

Rule 23(b)(3) sets forth a non-exclusive list of relevant factors, including whether individual class members wish to bring, or have already brought, individual actions; and the desirability of concentrating the litigation of the claims in the particular forum. Fed. R. Civ. P. 23(b)(3). Class adjudication of this case is superior to individual adjudication because it will conserve judicial resources and is more efficient for class members, particularly those who lack the resources to bring their claims individually. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998). Another factor, whether the case would be manageable as a class action at trial, is not of consequence in the context of a proposed settlement. *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, . . . for the proposal is that there be no trial.") (internal citation omitted); Here, concentrating the litigation in this Court is desirable because the allegedly wrongful conduct occurred within its jurisdiction. Class treatment will create uniform resolution of the issues, and achieve judicial economy, convenience and fairness to all parties.

### F.   The Class Satisfies Section 16(b) of the FLSA

Plaintiff contends that this case is also appropriate for certification under Section 216(b) of the FLSA, 29 U.S.C. § 216(b). Under the FLSA, an action may be maintained by an employee or employees on behalf of others who are "similarly situated." 29 U.S.C. § 216(b). Courts follow a two-phased approach for determining whether an FLSA action meets the "similarly situated" standard. *See, e.g., Lynch v. United Services Automobile Assoc.*, 491 F. Supp. 2d 357, 367-68 (S.D.N.Y. 2007) (quoting 29 U.S.C. § 216(b)).  In the initial, "conditional" certification phase, the "similarly situated" standard is more permissive than Rule 23 and requires only that the named plaintiffs make a "modest factual showing sufficient to demonstrate that they and potential

plaintiffs together were victims of a common policy or plan that violated the law." *Contrera v. Langer*, 278 F. Supp. 3d 702 (S.D.N.Y. 2017) (citations omitted).

Here, Plaintiff contends that he and Class Members are similarly situated for purposes of conditional certification of a collective action under Section 216(b) of the FLSA, 29 U.S.C. § 216(b). Plaintiff and Class Members all worked for Defendants and claim fraudulent filings and that employees were not paid proper wages. Accordingly, Plaintiff contends, and Defendants do not dispute, for purposes of settlement only, that conditional certification under 29 U.S.C. § 216(b) is appropriate.

## II.     The Proposed Settlement Is Fair, Reasonable, and Adequate and Should Be Approved in All Respects

Rule 23(e) requires court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable and adequate. Fed. R. Civ. P. 23(e)(2). Judicial determination of procedural fairness involves examination of the negotiating process leading to the settlement. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc*., 396 F.3d 96, 116 (2d Cir. 2005). To determine substantive fairness, courts determine whether the settlement's terms are fair, adequate, and reasonable according to the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974). Courts examine procedural and substantive fairness in light of the "strong judicial policy in favor of settlement" of class action suits. *Wal-Mart Stores*, 396 F.3d at 116 (internal quotation marks omitted). Even under high scrutiny, procedural and substantive considerations support approving the proposed settlement.[1]

---

[1] Defendants deny Plaintiff's allegations in the above-referenced cases, and deny any wrongdoing or violations of any law.

**A.  The Proposed Settlement Is Substantively Fair**

In *Grinnell Corp.*, the Second Circuit provided the analytical framework for evaluating the substantive fairness of a class action settlement. 495 F.2d at 448, *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). The *Grinnell* factors guide district courts in making this determination. They are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. 495 F.2d at 463. All of the *Grinnell* factors weigh in favor of final approval of the Settlement Agreement.

### 1.  Litigation Through Trial Would Be Complex, Costly, and Long (Grinnell Factor 1)

By reaching a favorable settlement prior to dispositive motions or trial, Plaintiff seeks to avoid significant expense and delay, and ensure a speedy, risk-free recovery for the class. "Most class actions are inherently complex and settlement avoids the costs, delays and [the] multitude of other problems associated with them." *Surdu v. Madison Glob., LLC,* 2017 WL 3842859, at *10 (S.D.N.Y. Sept. 1, 2017) (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001)). This case is no exception, with 114 putative class members and significant legal disputes over the propriety of class/collective action certification and as to the merits in each of the two subject cases. Although the Parties have already undertaken considerable time and expense in the Litigations, further litigation without settlement would necessarily result in additional expense and

13

delay. There would be depositions, discovery, including expert discovery, a motion for collective certification under 29 U.S.C. § 216(b), class certification proceedings pursuant to Fed. R. Civ. P. 23, and ultimately summary judgment proceedings, each at significant cost to the parties. Two complicated fact-intensive trials would be necessary. Preparing and putting on evidence on the complex factual and legal issues at such trials would consume tremendous amounts of time and resources for both sides and demand substantial judicial resources to adjudicate the disputes. Two trials on damages, even on a representative basis, would be costly and would further defer closure. Any judgments would likely be appealed, thereby extending the duration of the litigation. The settlement, on the other hand, makes monetary relief available to Class Members in a prompt and efficient manner. Therefore, the first *Grinnell* factor weighs in favor of final approval.

### 2.   The Reaction of the Class Has Been Positive (*Grinnell* Factor 2)

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *Maley v. Del Global Techs. Corp.,* 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002). The lack of class member objections "may itself be taken as evidencing the fairness of a settlement." *RMED Int'l, Inc. v. Sloan's Supermkts., Inc.*, No. 94 Civ. 5587. 2003 WL 21136726, at *1 (S.D.N.Y. May 15, 2003). Here, the claims administrator mailed the Court-approved notices ("Notices") of the class and collective action settlement to the class members. The Notices explicitly informed class members of their rights and the procedures to participate in the NYLL and FLSA settlements. After receipt of the Notice, only three class members have opted out of the settlement and no class members have exercised their right to object.

### 3.   Discovery Has Advanced Far Enough to Allow the Parties to Responsibly Resolve the Case (*Grinnell* Factor 3)

The parties have completed enough discovery to recommend settlement. The pertinent question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 475 (S.D.N.Y. 2013) (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004)). The Parties' discovery here meets this standard. Class Counsel conducted in-depth interviews with Plaintiff to determine the facts regarding the false filing claim, the hours he worked, the wages he was paid, the nature of his daily activities, and other information relevant to his claims and the claims of Class Members. Prior to the May 2, 2022 mediation, Plaintiff's Counsel obtained and reviewed data from Defendants, including 214 timecards for Plaintiff and Class Members, sample warning reports and employee introduction package.

Based on the documents produced by Defendants for discovery and mediation, Defendant Klever Urgiles's deposition testimony and Plaintiff's testimony, Plaintiff's counsel was well-equipped to evaluate the strengths and weaknesses of the case. *See Frank*, 228 F.R.D. at 185 (approving settlement of case "in relatively early stages of discovery" where parties had exchanged extensive information pertaining to the identities of class members and to Defendant's time and pay practices and where counsels' negotiations, while "cooperative," had "been in no way collusive"); *see also Diaz v. Eastern Locating Serv.*, 2010 WL 5507912, at *5 (S.D.N.Y. Nov. 29, 2010); *deMunecas v. Bold Food, LLC*, 2010 WL 3322580, at *5 (S.D.N.Y. Aug. 23, 2010) (approving settlement where plaintiffs had obtained discovery through an informal exchange of information and engaged in mediation). Therefore, this factor also weighs in favor of final approval.

15

### 4. Plaintiff Would Face Real Risks if the Case Proceeded (*Grinnell* Factors 4 and 5)

In weighing the risks of establishing liability and damages, the Court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *Henry v. Little Mint, Inc*., No. 12 Civ. 3996 (CM), 2014 WL 2199427, at *8 (S.D.N.Y. May 23, 2014) (quoting *In re Austrian*, 80 F. Supp. 2d at 177).  Although Plaintiff believe his claims are strong, they are subject to considerable risk as to liability and damages. "Litigation inherently involves risks." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997). Indeed, "[i]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969). In weighing the risks of establishing liability and damages, the Court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 177 (quoting *Marisol A. v. Giuliani*, 185 F.R.D. 152, 164 (S.D.N.Y. 1999)) (internal quotation marks omitted). A trial on the merits would involve significant risk, as detailed in Section II, "Overview of Investigation and Discovery", *supra*, because of (i) the uncertainty of the law pertaining to false filing claims, and (ii) the fact-intensive nature of proving liability under the FLSA and the NYLL, especially in regard to the time-shaving claim, which is highly dependent on testimony, and in light of the defenses available to Defendants. As such, to the extent that Plaintiff would argue that he was not appropriately compensated for all hours worked, he would have faced an extreme burden of proof.

Filing a claim pursuant to 26 U.S.C. § 7434(a) was risky because many (though not all) courts have held that allegedly fraudulent IRS filings must specifically name the plaintiff to be actionable under 26 U.S.C. § 7434(a). Against this, Plaintiff not only relied on a dissenting case, *Diaz v. InSeason Distribs, LLC*, but furthermore engaged in statutory exegesis, to argue that "other

16

person" under 26 U.S.C. § 7434(a) could refer to a collection of individuals, given that the same term can plainly refer to that under 26 U.S.C. § 6724(d)(1)(A). This would make the filing of fraudulent IRS Form 941s (which record aggregate payments to unnamed employees), and not just the filing of individual W-2s, actionable under the statute. *See* Dkt. No. 33 at 9-11. To Plaintiff's knowledge, this is a novel argument that has not yet been addressed by the case law.

Plaintiff not only alleged violations of 26 U.S.C. § 7434(a) but furthermore encompassed the same operative facts within a breach of contract theory, arguing that the implied covenant of good faith and fair dealing compels employers to remit their share of FICA taxes to the IRS, since failing to do so makes employees liable not only for their share of these taxes, but also for their employer's. This was an innovative, and hence risky, approach to Plaintiff Santos's claims, as 26 U.S.C. § 7434(a) complaints are not ordinarily accompanied by breach of contract (and unjust enrichment) claims. Bringing this theory was also risky in light of Defendants' position that Plaintiff was an undocumented worker and hence, ineligible for Social Security and Medicare benefits. However, Plaintiff's retort was that, irrespective of his eligibility for these benefits, he remains liable for paying the associated taxes. *See* Dkt. Nos. 12-14. To Plaintiff's knowledge, this argument has not been advanced before.

Plaintiff's counsel is experienced and realistic, and understands that the resolution of liability issues, the outcome of the trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration. The proposed settlement alleviates these uncertainties. Therefore, this factor weighs heavily in favor of approval.

### 5. Establishing a Class and Maintaining It Through Trial Would Not Be Simple (*Grinnell* Factor 6)

The risk of maintaining that class certification through trial is also present, particularly in light of the *Dukes* and *Comcast* decisions. Further, Defendants have experienced and skilled

17

counsel, who will formally oppose any subsequent motion to certify Plaintiff's state-law claims. Settlement eliminates this risk, expense, and delay. This factor also favors final approval.

### 6.   Defendants' Ability to Withstand a Greater Judgment (*Grinnell* Factor 7)

It is unlikely that Defendants could withstand a greater judgment, however, even if Defendants were able to withstand a greater judgment, their ability to do so "standing alone, does not suggest that the settlement is unfair." *Beckman*, 293 F.R.D. at 476 (internal citation marks omitted). Here, the Settlement Agreement provides Class Members with reasonable and more prompt relief than they would receive at the conclusion of the litigation, presumably several years from now, and which relief is not guaranteed due to the risks involved in proving liability and damages. Defendants' inability to withstand a greater judgment weighs in favor of the fairness of the settlement.

### 7.   The Settlement Fund Is Substantial in Light of the Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9)

The $450,000 settlement amount represents a good value given the attendant risks of litigation and the collection risks discussed above, even though the recovery could be greater if Plaintiff succeeded on all claims at trial and survived an appeal. The determination of whether a settlement amount is reasonable "does not involve the use of a mathematical equation yielding a particularized sum." *Raniere v. Citigroup Inc,*, 310 F.R.D. 211, 219 (S.D.N.Y. 2015) (internal quotation marks omitted). "Instead, 'there is a range of reasonableness with respect to a settlement – range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Id.* (quoting *Wal-Mart,* 396 F.3d at 119). Under the best case scenario, and considering the risks described above, assuming Plaintiff and the Class were to prevail on their claims for unpaid regular and overtime wages due to time-shaving, unpaid spread of hour premiums, and wage notice and

wage statement violations, the total class liability (exclusive of liquidated damages) calculated prior to mediation was approximately $4.82 Million (a 9.3% recovery).

However, in light of Defendants producing a Class list containing 114 individuals, our total revised class liability (exclusive of liquidated damages, based on our calculations prior to mediation, would be approximately $1.25 million (a 35.9% recovery). If the settlement were to include recovery for the false filing claim, and assuming that 100% of the Class suffered from the false filing damages, the additional liability of $570,000.00 (for a total of approximately $1.82 million) would mean a 24.68% recovery.

Based on recent case law in the District Courts of New York, courts have determined that plaintiffs do not have standing under Article III to raise claims for wage notice and wage statement violations. *See Metcalf v. TransPerfect Translations Int'l, Inc.,* No. 19 CIV. 10104 (ER), 2022 WL 4661926, at *16 (S.D.N.Y. Sept. 30, 2022); *Beh v. Cmty. Care Companions Inc.,* No. 1:19-CV-01417-JLS-MJR, 2022 WL 5039391, at *7–9 (W.D.N.Y. Sept. 29, 2022); *Sudilovskiy v. City WAV Corp.,* No. 22-CV-469 (DG), 2022 WL 4586307, at *4–5 (E.D.N.Y. Sept. 29, 2022). Therefore, we can potentially disregard the approximately $1.06 million in WTPA penalties.

Thus, based on the revised backwages and false filing damages allegedly owed of approximately $763,097.00, this settlement represents approximately a 59% recovery. However, if the assumptions as to hours worked or number of hours shaved per week were reduced to a more conservative figure, such as assuming thirty (30) minutes shaved per day instead of the full hour, the percentage recovery would increase to close to approximately a 65% recovery.

Moreover, these calculations may be reduced because of Defendants' positions and affirmative defenses. Defendants may raise the fact that supermarkets and groceries are not covered by the Hospitality Industry Wage Order, which guarantees spread of hours premiums to

any hospitality employee who works a shift in excess of ten (10) hours. Defendants may argue that supermarkets, such as Defendants, are covered by the Minimum Wage Order for Miscellaneous Industries and Occupations instead, which means that employees are <u>only</u> granted spread of hours premium if they are paid at the minimum wage rate. Additionally, Defendants may argue that not all putative Class Members suffered from the false filing damages, as only the individuals paid specifically via a combination of check and cash would qualify.

If we were to remove the false filing damages, and only consider the backwages, this settlement represents far more than a 100% recovery. However, if the assumptions as to hours worked or number of hours shaved per week were reduced to a more conservative figure, such as assuming thirty (30) minutes shaved per day instead of the full hour, the percentage recovery would increase to close to approximately a 362.51% recovery. There are significant disputed legal issues regarding Plaintiff's and the Class' claims, and this becomes a factual dispute dependent on testimonial evidence. Defendants may provide witness testimony indicating that the Plaintiff and Class Members were properly paid, received wage notices and wage statements and/or did not suffer from any time-shaving. Accordingly, there are substantial risks in establishing both liability and damages for the Class, and resolution of this action would hinge on the determination of complex factual and legal issues.

Upon the Court's approval, each class member who does not opt out will be eligible to receive a payment that is proportional to the number of the weeks they worked during the relevant class period. For those individuals that did not opt out of the settlement, the highest individual allocation amount is $9,451.10, and the average settlement payment will be $2,242.57. In Plaintiff's counsel's estimation, the settlement represents a significant percentage of the recovery that Plaintiff would have achieved had he prevailed on all of his claims and survived an appeal.

Weighing the benefits of the settlement against the risks associated with proceeding in the litigation, the settlement amount is reasonable. "[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell Corp.*, 495 F.2d at 455 n.2. "It is well settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982); *see also Cagan v. Anchor Sav. Bank FSB*, No. 88 Civ. 3024, 1990 WL 73423, at *12-13 (E.D.N.Y. May 22, 1990) (approving $2.3 million class settlement over objections that the "best possible recovery would be approximately $121 million").

### B.  The Proposed Settlement Is Procedurally Fair

#### 1.  The Settlement Was the Result of Arm's Length Negotiation

The proposed settlement is procedurally fair because it was reached through arm's-length negotiations, and after experienced counsel had evaluated the merits of Plaintiff's claims. *See Diaz*, 2010 WL 5507912, at *4 (finding settlement to be "procedurally fair, reasonable, adequate, and not a product of collusion" where plaintiffs had conducted a thorough investigation and engaged in extensive, arm's-length negotiations involving counsel and the services of an experienced class action mediator); *deMunecas*, 2010 WL 3322580, at *4 (same). A "presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (internal quotation marks omitted); *see also D'Amato,* 236 F.3d at 85. "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *Peoples v. Annucci*, 180 F. Supp.3d 294, 307 (S.D.N.Y. 2016) (quoting *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 WL 2230177, at *4

(S.D.N.Y. July 27, 2007); *see In re Top Tankers, Inc. Sec. Litig*., No. 06 Civ. 13761, 2008 WL 2944620, at *3 (S.D.N.Y. July 31, 2008)).

Here, the settlement was reached after Plaintiff conducted a thorough investigation and evaluation of the claims, and after extensive negotiations between the Parties, including a full-day mediation with neutral third-party mediator Martin F. Scheinman, during which the Parties engaged in a vigorous exchange regarding their respective claims and defenses.

After significant litigation and motion, the Parties' mediation with Martin Scheinman and subsequent negotiations, the Parties reached and executed a Settlement Agreement. Lee Dec.at ¶13. At all times during the settlement process, the Parties negotiated on an arm's-length basis. Lee Dec. at ¶15. These arm's-length negotiations involved counsel well-versed in wage and hour law, raising a presumption that the settlement achieved meets the requirements of due process.

### 2.   The Distribution of Class Notice Satisfied Due Process

As one hundred eleven (111) of the one hundred fourteen (114) Class Members received the class settlement notice (97%), we believe that the result of the class notice distribution is adequate and satisfies due process. While there are no rigid rules to determine the adequacy of notice in a class action, the standard is generally that of reasonableness. *In re Merrill Lynch Tyco Research Securities Litigation*, 249 F.R.D. 124 (2008), citing *Wal–Mart,* 396 F.3d at 113–14. Notice need not be perfect, but need be only the best notice practicable under the circumstances, and each and every class member need not receive actual notice, so long as class counsel acted reasonably in choosing the means likely to inform potential class members. *Weigner v. City of New York,* 852 F.2d 646, 649 (2d Cir.1988); *In re Prudential Securities, Inc.,* 164 F.R.D. 362, 368 (S.D.N.Y 1996) (finding due process does not require that every class member receive actual notice if reasonable means chosen that are likely to inform persons affected).

Rule 23(c)(2) requires the best notice practicable, not perfect notice. The word 'practicable' implies flexibility, with the type of notice depending upon the particular circumstances of each case. *Berland v. Mack*, 48 F.R.D. 121 (S.D.N.Y. 1969). Where members of the class are readily identifiable and personal notice would not be so prohibitively expensive as to prevent the class action from being prosecuted, individual notices by first class mail would in most cases be the 'best notice practicable.' *Id*. The Courts have consistently concluded that the parties' diligent effort to mail individual notices to all reasonably identifiable class members, the mailing of additional notice materials indirectly through interested third parties and the provision of publication notice meet the requirements of due process. *See Beckman v. Greentree Sec., Inc.,* 87 N.Y.2d 566, 570-71, 663 N.E.2d 886, 888, 640 N.Y.S.2d 845, 847 (1996) (mailing notice fulfilled due process-actual notice unnecessary).

Due process does not require actual receipt of the individual notice by each and every possible class member. *See In re Colt Indus.,* 155 A.D.2d 157, 160, 553 N.Y.S.2d 140, 142 (1st Dep't 1990) (approving notice by publication in two newspapers); *see also Weigner v. City of New York,* 852 F.2d 646, 649 (2d Cir.1988) (holding "all risk of non-receipt" need not be eliminated), *cert. denied* 488 U.S. 1005 (1989); *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 145, 168 (2d Cir. 1987); *Silber v. Mabon,* 18 F.3d 1449, 1451 (9th Cir. 1994) (holding class member bound by judgment although notice not received before opt-out date); *Peters v. National R.R. Passenger Corp.,* 966 F.2d 1483, 1486-87 (D.C. Cir. 1992) (same, notice not received because of incomplete address).

In the instant action, the Court should find that Class Members were provided with adequate notice of the settlement. Defendants provided a class list of 114 Class Members. In plain language that is easily understood by the average person (and was previously approved by this

Court), the claims notices set forth essential information, including the background of the action, the terms of the settlement, the plan of allocation of the settlement fund, and the various rights of class members under the settlement (including the right to opt-out, file claim forms, file objections and attend the Fairness Hearing).  The Claims Administrator disseminated the class notice to 114 Class Members, for whom contact details were provided by Defendants. Although 15 notices were returned as undeliverable without forwarding addresses, the Administrator diligently pursued obtaining alternate addresses for such Class Members and was able to locate 12 updated addresses, which it used to re-mail those notices, 12 of which were successfully delivered. Therefore, the Administrator successfully notified 111 of the 114 Class Members, for a total deliverable rate of approximately 97 %. Accordingly, the Court should find that the notices of the proposed settlement of this case provided by mail, was the best notice practicable under the circumstances, and that the Claims Administrator acted reasonably in informing potential class members of the settlement.

### III.    Approval of the FLSA Settlement Is Appropriate Under Federal Law

Plaintiff also requests that the Court approve the settlement of his FLSA claims. Plaintiff brought his FLSA claims as a collective action. Unlike the procedure under Rule 23, collective members must affirmatively opt into the litigation in order to join it. *See Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 84-85 (S.D.N.Y. 2001). True to the opt-in procedure, only individuals who cash their checks will release their FLSA claims. Because, under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date," FLSA collective actions do not implicate the same due process concerns as Rule 23 actions. *McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984), *abrogated on other grounds by Hoffmann-LaRoche Inc. v. Sperling*, 493 U.S. 165 (1989); *see also Diaz*, 2010 WL 5507912, at *6. Accordingly, the high standard for approval of a class action under

Rule 23 does not apply to an FLSA settlement. Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 n.8 (11th Cir. 1982); *Diaz*, 2010 WL 5507912, at *6; *deMunecas*, 2010 WL 3322580, at *7. Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. *Lynn's Food Stores*, 679 F.2d at 1353-54. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement. *Id.* at 1354; *Diaz*, 2010 WL 5507912, at *6; *deMunecas*, 2010 WL 3322580, at *7. In this case, the settlement was the result of litigation and arm's-length negotiation involving vigorous back and forth. Lee Dec. ¶ 12. During the litigation, counsel highly experienced in wage and hour law represented Plaintiff and Defendants.

As of this date, only three individuals have opted out and no individuals have objected to the settlement. Lee Dec. ¶ 21.

Because the Settlement Agreement resolves a clear and actual dispute waged in contested litigation and resolved through arm's-length settlement negotiations, it should be approved.

## <u>CONCLUSION</u>

For the reasons set forth above, Plaintiff respectfully requests that the Court: (1) certify the settlement class; (2) grant final approval of the Settlement Agreement as fair, reasonable, adequate and binding on all Class Members who have not timely opted-out; (3) approve the FLSA settlement; (4) grant conditional final approval, and (5) dismiss the Litigation with prejudice.

Dated: New York, New York
            February 10, 2023

                                    Respectfully submitted,

                                    **LEE LITIGATION GROUP, PLLC**

                                    By: */s/ C.K. Lee*
                                    C.K. Lee, Esq. (CL 4086)
                                    Anne Seelig, Esq. (AS 3976)
                                    148 West 24th Street, Eighth Floor
                                    New York, NY 10011
                                    Tel.: 212-465-1188
                                    *Attorneys for Plaintiff, FLSA Collective*
                                    *Plaintiffs and the Class*